UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CHARLES J. SKINNER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 1:06-CV-412 RM |
| | ) | |
| DOUGLAS AMBROSE, TREVEN BROWN, BRENT RODDY, and STEPHANIE SOUTHER, in their individual and official capacities; and the CITY OF FORT WAYNE, INDIANA, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants | ) | |

## OPINION and ORDER

This cause is before the court on the motion of Douglas Ambrose, Treven Brown, Brent Roddy, Stephanie Souther, and the City of Fort Wayne for summary judgment on Charles Skinner's claims against them. Also pending are motions to strike summary judgment exhibits: Mr. Skinner's motion to strike the report of the defendants' expert, Peter Method, Ph.D., and the defendants' motion to strike portions of Mr. Skinner's affidavit. For the following reasons, the motions to strike are denied as moot and the summary judgment motion is granted in part and denied in part.

FACTS

The following facts are taken from the summary judgment record and viewed in the light most favorable to Mr. Skinner, as the non-moving party. Payne

v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003). On November 4, 2006, Charles Skinner was driving his truck in Fort Wayne, Indiana. He was near the corner of Fox and Walnut Streets when Officer Treven Brown of the Fort Wayne Police Department observed that Mr. Skinner's license plate had expired in September. Officer Brown watched Mr. Skinner turn left onto Fairfield Avenue without using a turn signal and then drive half-way across the double yellow line on Fairfield, requiring a vehicle traveling in the opposite direction to move over to avoid Mr. Skinner's truck. Officer Brown says that when he saw Mr. Skinner's truck approaching the cement divider of a railroad bridge, he initiated a traffic stop.

Mr. Skinner pulled into a nearby parking lot and stopped his vehicle. Officer Brown asked Mr. Skinner for his driver's license and registration, which Mr. Skinner produced. Officer Brown says that even though he didn't smell alcohol on Mr. Skinner's breath or observe any alcohol containers in Mr. Skinner's truck, he believed Mr. Skinner was impaired.

Fort Wayne Police Officer Brent Roddy arrived on the scene to assist Officer Brown. Officer Roddy spoke with Officer Brown, talked to Mr. Skinner, and then administered a breath test to Mr. Skinner, which showed a blood-alcohol level of 0.00%. Officer Brown then requested Officers Stephanie Souther and Douglas Ambrose, both drug recognition experts with the Fort Wayne Police Department, to respond to his location.

Upon her arrival, Officer Souther talked with Mr. Skinner and administered standard field sobriety tests. Officer Souther told Mr. Skinner that she believed

him to be impaired, told him about Indiana's implied consent law, and asked him to go to the local hospital for blood and urine testing. Officer Brown handcuffed Mr. Skinner and put him in his police vehicle for transport to the hospital. Officer Roddy secured Mr. Skinner's vehicle in the parking lot and followed Officers Brown and Souther to the hospital.

Officer Souther continued her evaluation of Mr. Skinner at the hospital. Mr. Skinner signed a consent form, and a nurse drew a blood sample from Mr. Skinner. Mr. Skinner also supplied a urine sample. The tests were secured by hospital personnel and provided to Officer Souther to be forwarded to the state laboratory. At the conclusion of Officer Souther's evaluation of Mr. Skinner, she told him he was under arrest for driving while impaired. Officer Souther advised Mr. Skinner of his *Miranda* rights and handcuffed him.

Officer Brown took Mr. Skinner to the Allen County Jail, where he issued citations to Mr. Skinner for having an expired license plate, failing to signal when turning, driving left of center, and driving while impaired. Officer Brown completed a booking sheet at the jail and issued a receipt to Mr. Skinner for his driver's license. Mr. Skinner remained at the county jail until later that night when his brother posted his bond and he was released.

Mr. Skinner appeared in the Allen Superior Court on November 6 at 9:00 a.m., as directed, and learned that the charges against him had been dismissed. Mr. Skinner says he was unable to obtain copies of any probable cause affidavits

in his case and says his driver's license wasn't returned to him. Mr. Skinner reports that he was able to have his arrest expunged.

Mr. Skinner filed a notice of tort claim, which the City denied on May 15, 2007. Mr. Skinner then filed suit in this court claiming injury and damages under 42 U.S.C. § 1983 for violations of his Fourth, Fifth, and Fourteenth Amendment rights resulting from the actions and inactions of Officers Ambrose, Brown, Roddy, and Souther, individually and in their official capacities as officers of the Fort Wayne Police Department, and from unconstitutional customs, policies, or practices of the City of Fort Wayne, Indiana, as employer of those officers. Mr. Skinner seeks compensatory damages from all defendants, punitive damages from the individual defendants, expungement of the records of his arrest, return of his driver's license, attorney fees, and costs.

## MOTIONS TO STRIKE

Mr. Skinner has moved to strike the affidavit of Peter Method, Ph.D., which the defendants submitted in support of their summary judgment motion. The defendants rely on the opinions of Mr. Method, who is the Acting Director at the Indiana State Department of Toxicology, about the reasons for Mr. Skinner's behavior and the conclusions the officers reached about that behavior during the incident at issue. Mr. Skinner maintains Mr. Method's testimony doesn't pass the scientific reliability standard of <u>Daubert v. Merrill Dow Pharmaceuticals</u>, 509 U.S.

4

579 (1993). The defendants dispute Mr. Skinner's claims about Mr. Method's affidavit statements.

The defendants have moved to strike certain portions of Mr. Skinner's affidavit submitted in support of his summary judgment response. The defendants argue that portions of Mr. Skinner's affidavit statements are hearsay (Aff. ¶¶ 11, 12, 14, 26, and 27), not based on his personal knowledge (Aff. ¶¶ 9, 10, 18, and 24), and contradictory of his deposition testimony (Aff. ¶ 21), and they seek to have those statements stricken. Mr. Skinner didn't respond to the defendants' motion.

Examination of the record shows that consideration of the challenged affidavit statements wouldn't affect the outcome of the summary judgment motion, so the motions to strike will be denied as moot.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); *see also* Metzger v. Illinois State Police, No. 06-3251, 2008 WL 706602, at *3 (7th Cir. Mar. 18, 2008)

5

(court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party"). There is no genuine issue of material fact when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). However, the party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

DISCUSSION

Mr. Skinner alleges that Douglas Ambrose, Treven Brown, Brent Roddy, and Stephanie Souther, individually and in their official capacities as officers of the Fort Wayne Police Department, violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution when they arrested him without probable cause and without due process, had his blood drawn

6

without probable cause, and wrongfully seized his driver's license and never returned it to him.[1] Amd. Compl., ¶¶ 68, 70, 71, 72, 74. Mr. Skinner claims the officers took those actions while acting under color of state law. Amd. Compl., ¶ 67. Mr. Skinner also alleges that the City of Fort Wayne is liable for the actions of Officers Ambrose, Brown, Roddy, and Souther because the officers' actions were taken pursuant to a policy, custom, or practice of the City that resulted in a violation of his constitutional rights and because the events at issue occurred while the officers were acting within the scope of their employment with the City. Amd. Compl., ¶¶ 62, 63, 64, 75, 76.

*A. Claims Against the Officers*

*Fourth Amendment Claims*

Section 1983 requires Mr. Skinner to demonstrate that Officers Ambrose, Brown, Roddy, and/or Souther, while acting under color of state law, deprived him of rights secured by the United States Constitution. West v. Atkins, 487 U.S. 42, 48 (1988); Baker v. McCollan, 443 U.S. 137, 140 (1979). Mr. Skinner says his arrest was without probable cause and so constituted an unreasonable seizure of his person in violation of his Fourth Amendment rights. Whether an officer had probable cause to make an arrest

---

[1] Mr. Skinner has withdrawn his claim that his rights were violated when the officers searched his truck, *see* Resp., at 9, and admitted that he doesn't have a claim against any of the defendants for malicious prosecution. *See* Resp., p. 14.

> turns on whether a reasonable person in the officer's position would have probable cause to believe that an offense has been committed. This inquiry, in turn, depends upon whether the facts and circumstances communicated to the arresting officer at the time of the arrest would warrant a reasonable officer in holding such a belief.

<u>Woods v. City of Chicago</u>, 234 F.3d 979, 987 (7th Cir. 2000).

The defendants say they had probable cause to believe Mr. Skinner was impaired based on their observations of Mr. Skinner during the traffic stop. According to the officers, Mr. Skinner appeared confused and sluggish; he had to be reminded numerous times before he was able to comply with requests for documents; he had difficulty understanding directions and focusing on specific tasks; and his physical responses were impaired. The officers say they were able to determine that Mr. Skinner wasn't under the influence of alcohol, but believed him to be under the influence of a drug or controlled substance. The defendants argue that under the totality of the circumstances, the officers had probable cause to arrest Mr. Skinner for driving while impaired. The defendants say, too, that the officers had probable cause to request Mr. Skinner to submit to a blood test. They say Mr. Skinner agreed to be taken to the hospital to undergo blood and urine testing, as evidenced by the signed consent form. *See* Brown Aff.; Souther Aff.; Roddy Dep.

Mr. Skinner responds that he had no difficulty producing his license and registration, no difficulty responding to any of the officers' requests, and was able to pass all the field sobriety tests administered to him. He says he didn't agree to go to the hospital for a blood test and only signed the consent form when one of

8

the officers told him he would be arrested and lose his license for a year if he didn't comply. Mr. Skinner claims the defendants lacked probable cause to arrest him, so a warrant was necessary to compel the blood test, and when the defendants didn't obtain a warrant, his rights were violated. *See* Skinner Aff.

Mr. Skinner's testimony creates a genuine issue of material fact as to whether the officers had probable cause to arrest him for driving while intoxicated and require him to undergo a blood test. Summary judgment on these issues is inappropriate. *Contra* Smith v. Lamz, 321 F.3d 680, 684 (7th Cir. 2003) ("when 'what happened' questions are not at issue, the ultimate resolution of whether probable cause existed is a question of law").

*Due Process Claim*

Mr. Skinner alleges the officers violated his due process rights when they seized his driver's license and didn't return it to him or turn it over to the criminal court. The defendants assert that at the time of Mr. Skinner's arrest, he was issued a receipt for his license at the Allen County Jail, and thereafter his driver's license and the related paperwork was provided to the state court. In response, Mr. Skinner says he's not stating a violation of the Fourth Amendment, but "[r]ather, he alleges a violation of the Fifth Amendment, namely, they took and kept his property . . . without due process of law." Resp., at 12.

"The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the

9

States, from depriving any person of property without due process of law." Dusenbery v. United States, 534 U.S. 161, 167 (2002); *see also* Public Utilities Comm. v. Pollak, 343 U.S. 451, 461 (1952) (the Fifth Amendment applies to and restricts only the federal government); Betts v. Brady, 316 U.S. 455, 462 (1942) ("Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safe-guarded against state action in identical words by the Fourteenth."). Mr. Skinner claims his Fifth Amendment due process rights were violated by officers of the Fort Wayne Police Department acting under color of state law. Mr. Skinner hasn't alleged any action by the federal government or federal officials that would state a Fifth Amendment claim.

To establish a denial of due process under the Fourteenth Amendment, Mr. Skinner must show that he was deprived of a constitutionally protected life, liberty, or property interest, and the defendants didn't afford him the process due under the circumstances. Ingraham v. Wright, 430 U.S. 651, 672 (1977); Board of Regents v. Roth, 408 U.S. 564, 570 (1972). He hasn't done so. Mr. Skinner hasn't alleged that the deprivation of his property resulted from any established pre- or post-deprivation procedures. *See* Parratt v. Taylor, 451 U.S. 527, 538-544 (1981) (concluding that no due process claim was stated where there was no allegation that deprivation of property resulted from established post-deprivation state procedure). He hasn't presented any argument or evidence about what processes and procedures were due or how the defendants' actions didn't comply with those procedures. He hasn't alleged that the City or its police department has

10

customs, policies, or practices relating to the complained-of actions that were or weren't followed. Nor has he alleged or argued that post-deprivation remedies were insufficient or unavailable to secure a replacement driver's license. *See* Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" (*quoting* Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005))); Roger Whitmore's Auto. Servs., Inc. v. Lake County, 424 F.3d 659, 664 n.2 (7th Cir. 2005) ("It is the parties' duty to package, present, and support their arguments."); Weinstein v. Schwartz, 422 F.3d 476, 477 n.1 (7th Cir. 2005) ("The failure to develop an argument constitutes a waiver."). The defendants are entitled to summary judgment on Mr. Skinner's claim that he was deprived of his property without due process of law.

### B. Claims Against the City of Fort Wayne

Mr. Skinner claims the City of Fort Wayne permitted Officers Ambrose, Brown, Roddy, and Souther to take various actions pursuant to customs, policies, or practices that violated his Fourth Amendment rights. He also claims the City is liable as employer of Officers Ambrose, Brown, Roddy, and Souther. "[M]unicipalities and other local governmental bodies are 'persons' within the meaning of § 1983" and thus may be held liable under that section. Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York

11

City Dep't of Social Servs., 436 U.S. 658, 689 (1978)). A municipality may not be held liable under Section 1983 on a theory of *respondeat superior*. Board of Comm'rs v. Brown, 520 U.S. at 403. To hold a municipality liable, a plaintiff must identify some municipal policy or custom that caused his injury. *Id.* "It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged [and there is] a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404.

Unconstitutional policies or customs can take three forms: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although unauthorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Phelan v. Cook County, 463 F.3d 773, 789 (7th Cir. 2006). The City maintains Mr. Skinner can't establish any unconstitutional custom, policy, or practice of the City that proximately caused any injuries to him.

Mr. Skinner alleged in his amended complaint that the City of Fort Wayne has a custom, policy, or practice of instructing officers to allow less experienced officers to train by participating in arrests without regard to whether the arrest was with probable cause, Amd. Compl., ¶ 62; instructing officers to transport arrestees for blood draws without getting a warrant, Amd. Compl., ¶ 63; and

12

maintaining records of arrests made by officers without regard to whether the arrest was made with probable cause and making those records available to other law enforcement agencies. Amd. Compl., ¶ 64. Mr. Skinner claims for the first time in his summary judgment response that the City also has a custom, policy, or practice of allowing officers to arrest a person based on the comparing of the person's pupils "to dots on a laminated piece of paper." Resp., at 15. Mr. Skinner says because he didn't consent to having his blood drawn, summary judgment for the City is inappropriate.

Mr. Skinner maintains officers of the Fort Wayne Police Department arrested him without probable cause, but the existence of an unconstitutional custom, policy, or practice can't be established by his reliance on the single incident of his own arrest. Mr. Skinner must present "more evidence than a single incident to establish liability." Calhoun v. Ramsey, 408 F.3d 375, 380 (7th Cir. 2005); *see also* Phelan v. Cook County, 463 F.3d 773, 790 (7th Cir. 2006) ("in cases attacking gaps in express policies, what is needed is evidence that there is a true municipal policy at issue, not a random event"). "The usual way in which an unconstitutional policy is inferred, in the absence of direct evidence, is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." Jackson v. Marion County, 66 F.3d 151, 152 (7th Cir. 1995). Mr. Skinner hasn't done so.

Mr. Skinner hasn't set forth any evidence of other acts from which the court could infer the policies of which he complains. *See* Phelan v. Cook County, 463 F.3d 773, (7th Cir. 2006) ("The plaintiff must introduce evidence demonstrating that the lawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision."). Mr. Skinner hasn't argued or presented any evidence tending to show that his own arrest resulted from a custom, policy, or practice of officers allowing less experienced officers to train by participating in arrests without regard to whether the arrest was with probable cause or comparing his pupils to dots on a laminated piece of paper. Nor has Mr. Skinner argued or presented any evidence to establish that the City is maintaining records of his arrest and making them available to other law enforcement agencies. *See* Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 479 (7th Cir. 1997) ("boilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient" (internal quotation and citation omitted)). The City of Fort Wayne is entitled to summary judgment on Mr. Skinner's claims against it.

CONCLUSION

Based on the foregoing, the parties' motions to strike portions of the summary judgment submissions [docket # 40 and # 41] are DENIED as moot and the defendants' summary judgment motion [docket # 36] is GRANTED IN PART and DENIED IN PART as follows:

(a) the summary judgment motion is GRANTED on Mr. Skinner's claims against the City of Fort Wayne;

(b) the summary judgment motion is GRANTED on Mr. Skinner's claim that his due process rights were violated by the seizure of and failure to return his driver's license; and

(c) the summary judgment motion is DENIED on Mr. Skinner's claims that Officers Ambrose, Brown, Roddy, and Souther arrested him and forced him to have his blood drawn without probable cause.

The parties' joint motion to continue trial [docket # 48] is DENIED. The final pretrial conference remains set for May 27, 2008 at 1:30 p.m. and a three-day jury trial remains scheduled to commence at 9:30 a.m. for June 10, 2008.

SO ORDERED.

ENTERED:   April 28, 2008

　　　　　　　　　　　　　　  /s/ Robert L. Miller,Jr.
　　　　　　　　　　　　　　 Chief Judge
　　　　　　　　　　　　　　 United States District Court